In re Gregory J. LEICHT and
Sara A. Leicht, Debtors.

BRUIN PORTFOLIO, LLC, Appellant,

v.

Gregory J. LEICHT and Sara
A. Leicht, Appellees.

BAP No. MW 97–067.

United States Bankruptcy Appellate Panel
of the First Circuit.

July 7, 1998.

Jeffrey D. Ganz, Riemer & Braunstein, Boston, MA, for Appellant.

John A. Burdick, Jr., Burdick & DiLeo, P.C., for Appellees.

Before GOODMAN, HAINES, CARLO, U.S. Bankruptcy Judges.

HAINES, Bankruptcy Judge.

Bruin Portfolio, LLC ["Bruin"] appeals the bankruptcy court's order avoiding its judicial lien on Gregory and Sara Leicht's ["Leicht"] residence. After considering carefully Bruin's challenges to the order, we affirm.

## Jurisdiction

The bankruptcy court's lien avoidance order is a final order. *See In re Weinstein,* 217 B.R. 5, 6 (D.Mass.1998), *appeal pending; see also East Cambridge Sav. Bank v. Silveira (In re Silveira),* 141 F.3d 34 (1st Cir. 1998)(court of appeals reviewing lien avoidance order without discussion of jurisdiction); *see generally In re Saco Local Dev. Corp.,* 711 F.2d 441, 442–48 (1st Cir.1983)(Breyer, J.)(discussing bankruptcy appellate jurisdiction); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643 (1st Cir. BAP 1998)(same). We have jurisdiction under 28 U.S.C. § 158(a)(1) and (b).

## Scope of Review

Bruin's challenge to the bankruptcy court's lien avoidance order raises legal issues exclusively. We review *de novo* the lower court's legal conclusions. *See Krikor Dulgarian Trust v. Unified Management Corp. Of Rhode Island, Inc. (In re Peaberry's Ltd.),* 205 B.R. 6, 7 (1st Cir. BAP 1997). *See also LaRoche v. Amoskeag Bank (In re LaRoche),* 969 F.2d 1299, 1301 (1st Cir.1992).

## Background

The Leichts, Chapter 7 debtors, executed a $272,000.00 promissory note to Home National Bank of Milford on July 8, 1988. Bruin eventually succeeded to the bank's interest by assignment via the Federal Deposit Insurance Corporation.

The Leichts purchased a home in Westborough, Massachusetts on February 13, 1992, and, pursuant to state statute, recorded a declaration of homestead for the property on October 12, 1994.

Bruin initiated suit on its promissory note in state court and obtained a writ of attachment, recorded as a lien against the Leichts' real estate on April 4, 1995. The state court issued judgment in Bruin's favor on August 30, 1996.

The Leichts filed a voluntary Chapter 7 petition on April 7, 1997. They scheduled their Westborough residence, held in joint

tenancy, but did not claim an exemption in the property on Schedule C. They did, however, indicate their choice to utilize Massachusetts state exemption rights. On June 26, 1997, the Leichts filed a motion seeking to avoid Bruin's lien under § 522(f) of the Bankruptcy Code,[1] asserting that the lien impaired their homestead exemption. Bruin opposed the motion, pointing out, among other things, the Leichts' failure to schedule their exemption claim. The Leichts quickly filed a motion to amend their Schedule C to set forth the homestead exemption claim on July 16, 1997.

On August 12, 1997, after a nonevidentiary hearing, the bankruptcy court granted the Leichts' lien avoidance motion. This appeal ensued.

### Discussion

Bruin's attack on the bankruptcy court's lien avoidance order proceeds on two fronts. First, it argues that the court misapprehended the substance of the Massachusetts homestead exemption, leading, in turn, to a misapplication of § 522(f). Second, it urges that, if

§ 522(f) operates to avoid its lien, the statute effects a "taking" offensive to the United States Constitution's Fifth Amendment. We will address each argument in turn.

### I.

### *Section 522(f) and the Massachusetts Homestead Statute*

#### a. The Lay of the Land

 We begin by noting that, under § 522(b), debtors in bankruptcy may elect to utilize either the Bankruptcy Code exemptions set forth in § 522(d) *or* the exemptions provided by their state of residence together with those provided by federal, nonbankruptcy law. If a state has "opted out" of the federal exemption scheme, its resident debtors are restricted to the latter option.[2] Massachusetts permits its debtors to elect between the state and federal exemption alternatives. The Leichts selected the Massachusetts exemption scheme and claimed the Massachusetts statutory homestead exemption.[3]

---

1. Unless otherwise indicated, all citations are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, *et seq.*

2. Section 522(b) reads:
 Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—
 (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
 (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at

the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
 (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.
 § 522(b).

3. In its statement of issues, Bruin asserts that the debtors improperly amended Schedule C to assert an exemption in their Westborough homestead after their bankruptcy filing. But Bruin's brief gives the point short shrift, as did its oral argument. We need not devote extensive treatment to points raised, but effectively abandoned by the appellant. *See Birch v. Choinski (In re Choinski)*, 214 B.R. 515, 524 & n. 15 (1st Cir. BAP 1997)(concluding that arguments raised only perfunctorily on appeal are waived, and the "court need not put flesh on ... frail, flesh-bare bone[s]"); *accord United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). In any event, the Leichts' amendment to Schedule C did not deprive Bruin of the opportunity to challenge the exemption claim, Fed.R.Bankr.P. 4003(b)(providing 30 days following amendment to schedules to object to exemption), a step it failed to take.

### b. The Statutory Geography

#### 1. The Massachusetts Homestead Statute

We begin by examining the Massachusetts homestead statute. It provides:

#### § 1. Right to acquire; exemptions; definitions

An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:

(1) sale for taxes;

(2) for a debt contracted prior to the acquisition of said estate of homestead;

(3) for a debt contracted for the purchase of said home;

(4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;

(5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;

(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

Mass. Gen. Laws ch. 188, § 1 (Supp.1998).

A property owner "acquire[s]" the homestead by declaration, either in the deed by which the debtor obtains the property, or by a subsequently recorded instrument. *Id.* § 2. Chapter 188 also provides that, in case of marital separation, the probate court may order use and occupation of the homestead by the spouse who is not the declared "owner" of the homestead, minor children of the marriage, or both. *Id.* § 3 (1991). The homestead "continue[s] for the benefit of a surviving spouse and minor children" following the declared owner's death. *Id.* § 4. Mortgagees and encumbrancers of the homestead realty are protected against a subsequent homestead declaration, *see id.* § 5, but the homestead estate will prevail as against a third party who acquires the equity of redemption on execution. *See id.* § 6. The homestead may be terminated by deed or recorded declaration signed by the record homestead owner and his or her spouse. *See id.* § 7.

#### 2. Section 522(c)

Although Bruin's appeal raises § 522(f) lien avoidance issues, § 522(c) is critical to our analysis. It establishes the post-bankruptcy relationship between "property exempted" and debts that arose (or that are treated as having arisen) before the commencement of the bankruptcy case:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title; or

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not voided under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity a conservator, receiver, or liquidating agent for such institution.

§ 522(c). *See Davis v. Davis (In re Davis)*, 105 F.3d 1017 (5th Cir.1997)(describing operation of § 522(c) vis-a-vis state exemption provisions), *rehearing granted en banc*, 131 F.3d 1120 (5th Cir.1997).[4]

### 3. Section 522(f)

Section 522(f)'s operation is at the center of this appeal. It provides debtors the ability to avoid (*i.e.* to reduce or eliminate) certain liens, including judicial liens, as is Bruin's, that encumber exempt property. It states:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement; and

(ii) to the extent that such debt—

(I) is not assigned to another entity, voluntarily, by operation of law, or otherwise; and

(II) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support; or

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(ii) implements, professional books, or tools[ ] of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien[;]

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

(3) In a case in which State law that is applicable to the debtor—

(A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and

---

**4.** We acknowledge that, pending the Fifth Circuit's *en banc* decision, the panel decision in *Davis* carries no weight. Our conclusions do not turn on the *Davis* panel's holding. Nevertheless, we refer to the panel's opinion several times for the useful discussion it contains.

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;

the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.

§ 522(f). *See In re Silveira,* 141 F.3d at 38 (explaining operation of § 522(f)'s lien avoidance formula); *see generally* David Gray Carlson, *Security Interests on Exempt Property After the 1994 Amendments to the Bankruptcy Code,* 4 Am. Bankr.Inst. L.Rev. 57 (1996); Scott Everett, *Debtors' Delight? Bankruptcy Reform Act of 1994: How Revisions to 11 U.S.C. § 522(f) Affect Debtors' Ability to Avoid Liens Which Impair Texas Personal Property Exemptions,* 26 Tex. Tech. L.Rev. 1331 (1995).

### c. Mapping the Issues

#### 1. Bruin's View

Bruin argues that, properly applied, § 522(f) cannot operate to avoid a judicial lien on Massachusetts homestead property if the lien is in consequence of a debt contracted prior to the acquisition of the debtor's homestead estate. Its contention pivots on Massachusetts' limited definition of "homestead," the manner in which homestead rights are acquired in the State, historical state law treatment of the homestead, and the date that the Leichts became indebted to Bruin's predecessor in interest. Bruin contends that, because the Massachusetts statute expressly withholds homestead protection against debts contracted for before the homestead is "acquired," a lien (such as its own) enforcing collection of such a pre-acquisition debt cannot "impair" the exemption within the meaning of § 522(f).[5]

Bruin characterizes the Massachusetts homestead as an "estate," distinct from the real estate to which it relates. Thus, in Bruin's view, Massachusetts does not really provide a state law exemption in real estate at all. It extends protection only to the "homestead estate," and the homestead estate, by definition, is valued by subtracting pre-acquisition contract claims (and liens enforcing them) from the value of the underlying real estate. According to Bruin, because the Leichts borrowed from its predecessor before they acquired their homestead estate by recorded declaration, its lien is immune from any homestead-exemption-based bankruptcy attack.[6]

Bruin points to *In re Fracasso,* 210 B.R. 221 (Bankr.D.Mass.1997)(Boroff, J.) in support of its position. *In re Fracasso* sustained a Chapter 7 trustee's objection to the debtor's Massachusetts homestead exemption claim on the ground that pre-declaration contract debts numbered among the prepetition liabilities. The *In re Fracasso* court concluded that there is no conflict between the state law exemption and § 522(c) because § 522(c) only limits the liability of "property exempt-

---

**5.** It is worth noting what this dispute is *not* about. There is no dispute regarding the value of the Westborough real estate, application of § 522(f)(2)'s avoidance formula, or what the result of that application (partial or full avoidance) will be. *See In re Silveira,* 141 F.3d at 37–39 (explicating application of § 522(f)'s lien avoidance formula). The parties agree that, if the exemption and application of § 522(f)(2)'s formula turn on the value of the real estate, Bruin's lien will be avoided *in toto*. As discussed in detail in the text that follows, Bruin's argument is pinned to the proposition that it is not the value of the real estate that matters, but the value of the "homestead estate" as defined in the Massachusetts statute.

**6.** According to Bruin, the Massachusetts homestead is Swiss cheese with its statutory exceptions (including the pre-acquisition contract debt exception) as its holes. The Code sets forth categories of prebankruptcy claims, listed in §§ 522(c)(1), (2), and (3), that may be satisfied by resort to "property exempted" by debtors. Since the "property exempted" is Swiss cheese, Bruin contends, § 522(c) necessarily operates on it holes and all.

ed" to enumerated prepetition debts, and because "property exempted" under the Massachusetts homestead statute excludes the value of the homestead to the extent of pre-acquisition contract debts. 210 B.R. at 227. Stated another way, the *In re Fracasso* court concluded that pre-acquisition (or pre-declaration) contract debt comes off the top of the debtor's residential equity, *before* the determination of what "property" the debtor "has exempted." *See* 210 B.R. at 225 ("[Section] 522(c) was intended to apply only after there had first been an unrestricted definition of exemption under § 522(b)."). Moreover, *In re Fracasso* considers its approach to be consistent with the Supreme Court's recognition in *Owen v. Owen* that " '[n]othing in [the Code] limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all.' " *In re Fracasso*, 210 B.R. at 227 (quoting *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)).

### 2. Appellee's Position

The decision below is consistent with the bankruptcy judge's prior published ruling, *see In re Boucher*, 203 B.R. 10 (Bankr.D.Mass.1996)(Queenan, J.)(overruling trustee's objection to homestead exemption), is in harmony with the conclusions drawn by three other Massachusetts bankruptcy judges, *see In re Mills*, 211 B.R. 1 (Bankr.D.Mass.1997)(Kenner, J.)(overruling objection to exemption and holding that, within the bankruptcy case, the Massachusetts homestead exemption is effective against all prepetition creditors, including those with contract claims predating the homestead declaration); *In re Griffin*, 208 B.R. 608 (Bankr.D.Mass.1997)(Hillman, J.)(same); *In re Whalen–Griffin*, 206 B.R. 277 (Bankr.D.Mass.1997)(Feeney, J.)(same), and, accords with the more recent determination by the United States District Court for the District of Massachusetts. *See In re Weinstein*, 217 B.R. 5 (Harrington, J.)(affirming ruling of bankruptcy court, Hillman, J., overruling creditor's objection to exemption, praising the reasoning of *In re Whalen–Griffin* and *In re Boucher* ).

This majority view proceeds on the following analytical premises: (1) § 522(b) permits a debtor's use of state law exemptions; (2) once exemptions are invoked in a bankruptcy proceeding, § 522(c) dictates the extent to which exempt property may be called to answer for prebankruptcy debts; (3) § 522(c) generally provides that, after bankruptcy, exempt property "is not liable" for prebankruptcy debts *except* debts secured by tax liens or other valid, unavoided liens and debts for taxes, alimony/support/separate maintenance, and certain debts stemming from bank failures; (4) § 522(c) preempts state laws that define the operative effect of exemptions more restrictively, or more expansively, than it does; and, (5) because the Massachusetts homestead statute purports to limit the operative effect of the homestead exemption against pre-acquisition contract debts, it is preempted by § 522(c). *See In re Whalen–Griffin*, 206 B.R. at 290–292; *see also In re Weinstein*, 217 B.R. at 7 (following *Whalen–Griffin* ); *In re Mills*, 211 B.R. at 2 (same); *In re Griffin*, 208 B.R. at 608 (same).

Thus, it would follow, as the lower court concluded here, that a judicial lien that encumbers a Massachusetts homestead can be avoided under § 522(f)'s formula, even a judicial lien that secures a pre-acquisition contract debt. This is so because such a lien "impairs" the homestead exemption within the meaning of § 522(f). In the lower court's view, Bruin's lien "impairs an exemption to which [the debtors] *would have been* entitled but for the lien itself." *Owen v. Owen*, 500 U.S. 305, 310–11, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). And the federal "policy disfavor[s] the impingement of certain types of liens upon exemptions, whether federal- or state-created." *Id.* at 313, 111 S.Ct. 1833. The decision below rests on the premise that a state law exemption, when invoked in bankruptcy proceedings, becomes the platform for bankruptcy law remedies (*e.g.,* § 522(f) lien avoidance) and for the federal fresh start (*e.g.,* § 522(c)), and, therefore, a state may not—even by way of exemption definition—override the "competing or limiting policies" codified in the federal statute. *Owen*, 500 U.S. at 313, 111 S.Ct. 1833.

#### d. An Analytical Foundation

At first blush, the issues create a circular conundrum. If the Code permits a debtor's invocation of state exemptions, and if the state exemptions are defined in such a way that they simply do not operate against one or more categories of prepetition claims, so that such claims (and resulting liens) hover without the sphere of a debtor's exemption protections, how can a judicial lien securing such a claim "impair" the exemption so as to be vulnerable to § 522(f) avoidance? To answer the question we must discern the outer limits of a state law's ability to control an exemption's operative characteristics in the bankruptcy universe.

As *In re Fracasso*'s construct makes plain, between state exemption law and federal bankruptcy policy there is much space for disagreement. Well-informed courts may reach conclusions light-years apart.

In the end, however, we are convinced that, although through § 522(b) Congress provided states with the opportunity to define the category and content of exemptions resident debtors may invoke in bankruptcy (going so far as to authorize states to "opt out" of the federal exemption scheme), it defined the operative effect of exemptions in bankruptcy through §§ 522(c) and (f). We reject *In re Fracasso*'s conclusion because it rests on a fundamental mis-perception regarding the extent to which Congress truncated its deference to state exemption policy through § 522(c)'s preempting provisions. We embrace, instead, the *In re Boucher/In re Whalen–Griffin/In re Weinstein* construct. As a consequence, those provisions of the Massachusetts homestead statute that limit the exemption's vitality against certain categories of claims cannot hold sway against conflicting Code provisions.

Our conclusions follows from § 522(c)'s context as well as from the practical fact that, however the homestead may function as a state law matter, to defer to state law so far as Bruin asks would import into bankruptcy proceedings alien notions that frustrate federal aims. It follows also from the complementary conclusion that such defer-ence in the bankruptcy process would not square with state law objectives. *In re Whalen–Griffin* and *In re Boucher* are our polestars.

#### e. Charting the Boundaries of the Bankruptcy Debtor's Exemption

We begin by answering the question of exactly what property is "exempted" by a Massachusetts debtor who invokes the state homestead exemption in bankruptcy.[7] Is congressional deference so great, or are the exceptions set forth in Mass. Gen. Laws ch. 188, § 1 so integral a part of the state exemption's essence, that the exceptions must operate as part-and-parcel of the exemption when it is invoked in a bankruptcy case? *In re Boucher* answers the question succinctly:

> Allowing a debtor to elect state exemptions constitutes a significant deference to state law on the part of Congress, as does the congressional authorization for states to pass legislation prohibiting their residents from claiming federal exemptions pursuant to section 522(d). *See* 11 U.S.C. § 522(b) (1994). Congress nevertheless enacted two general rules without giving any indication they are to apply only to the federal exemptions. First, it invalidated exemption waivers, making no exception for waivers deemed valid under state law. *See* 11 U.S.C. § 522(e), (f) (1994).
>
> Second, and more to the point here, Congress made exempt property liable only for certain nondischargeable debts and unavoided liens. In doing so, it expressed no deference for debts protected by state law from the state's exemptions....
>
> ....
>
> In light of the clear command of section 522(c) and the pre-emptive power of Congress under its constitutional authority to establish uniform bankruptcy laws, congressional approval of the use of state exemptions cannot be taken to extend to exemptions that protect debts left unprotected by section 522(c). Yet, Congress obviously wanted a debtor to have exempt

---

7. The parties take it as a given, as do we, that the Massachusetts homestead statute sets forth prop-erty that "is exempt under ... State ... law" within the meaning of § 522(b)(2)(A).

property. The result is that the Debtor's election of the state exemption stands, but the state exception for prehomestead debts does not. Invalidating this exception to the exemption is much like voiding the waiver of a state exemption pursuant to section 522(e), notwithstanding the waiver's validity under state law. Courts have had no difficulty doing this. *E.g., Dominion Bank of Cumberlands, N.A. v. Nuckolls,* 780 F.2d 408 (4th Cir.1985); *In re Blair,* 79 B.R. 1 (Bankr.D.Ariz.1987).

203 B.R. at 12–13. *See also In re Weinstein,* 217 B.R. at 7; *In re Whalen–Griffin,* 206 B.R. at 281–82. Stated differently, "states can determine the nature and amount of property that can be exempted, but not the types of debts to which the exemption applies." *In re Whalen–Griffin,* 206 B.R. at 282. (citing *In re Scott,* 199 B.R. 586, 593 (Bankr.E.D.Va.1996) for the conclusion and

*In re Conyers,* 129 B.R. 470, 472 (Bankr. E.D.Ky.1991) for the proposition that federal law determines types of debts collectible from exempt property after bankruptcy).[8]

■ Section 522(c) completes the Code's treatment of nondischargeable debts, complementing *inter alia* §§ 523(a), 524(a)(3) and 727(b), by providing that exempt property is immunized against liability for prebankruptcy debts, including "some, *but not all,* nondischargeable debts." *In re Davis,* 105 F.3d at 1020.[9] The basis of Bruin's claim is, as prepetition claims go, unexceptional. As a claim arising from a promissory note, its lien status aside, it is entitled to no special treatment or priority, and Bruin does not assert that it fits within any § 523(a) discharge exception. Yet, Bruin would have it that, merely because of the date that the Leichts undertook their contract obligation to Bruin's predecessor, it is entitled to defeat their homestead

8. We resolve the issues before us by examining the relationship among § 522(b)(2)(A), the Massachusetts homestead exemption and § 522(c). *Edmonston v. Murphy (In re Edmonston),* 107 F.3d 74 (1st Cir.1997), held that "to the extent there are joint creditors" who may, under Massachusetts law, reach entireties property to satisfy their claims, a bankruptcy debtor's exemption in such property is "invalid *ab initio,*" if "a proper objection by a party in interest" is made in the bankruptcy case. *Id.* at 77 (holding that Chapter 7 trustee is a proper party to assert the objection). Its rationale does not apply here. A debtor's right to claim an exemption in entireties property is provided by § 522(b)(2)(B). However, unlike § 522(b)(2)(A), § 522(b)(2)(B) expressly incorporates not only the state's designation of the "nature" of the property (viz "an interest as a tenant by the entirety or joint tenant"), but also limits the exemption's availability based on creditors' ability to reach the debtor's interest in the property as a matter of nonbankruptcy (*i.e.,* state) law (entireties property is exempt "to the extent that such interest ... is exempt from process under applicable nonbankruptcy law.")

9. Indeed, § 522(c) may not be a one-way street. It may operate to subject exempt property to liabilities for which it could not be reached under state law. *In re Davis* illustrates the point. Concluding that the Texas state homestead law, which immunized the debtor's homestead from, among other things, his former spouse's claims for alimony, maintenance and support, was preempted by § 522(c)(1), the Fifth Circuit panel stated:

> [F]ederal law determines whether property is exempted and immunized against seizure and sale for prebankruptcy debts. § 522. The

debtor's qualified right to exempt property from the estate, and the relationships between the debtor, his creditors, and exempted or non-exempted property with regard to prebankruptcy debts, are governed exclusively by federal law. Consequently, it is clear that the state homestead exemption law has been superseded by the Bankruptcy Code, and that the state law cannot alter the obligations of a bankruptcy debtor and his creditors as provided for by federal bankruptcy law. For these reasons, we conclude that the state homestead exemption law is inoperative against the debtor's former spouse in this case and that she is entitled under the Bankruptcy Code to proceed against the debtor's otherwise exempted property to satisfy her alimony, maintenance, and child support judgment....

*Id.,* 105 F.3d at 1022–23 (citations omitted). *See also e.g., David Dorsey Distrib., Inc. v. Sanders,* 39 F.3d 258, 260 (10th Cir.1994)("Although bankruptcy courts defer to state law when determining the amount of the allowable state homestead exemption, section 522(f) still controls the 'availability of lien avoidance,' " quoting *Heape v. Citadel Bank of Independence (In re Heape),* 886 F.2d 280, 282 (10th Cir.1989)); *Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox),* 15 F.3d 1347, 1356 (5th Cir.1994)("[A]lthough states remain free to define the property eligible for exemptions under § 522(b), the particular liens that may be avoided on that property are determined by reference to federal law: specifically, § 522(f) of the Bankruptcy Code.") *In re VanZant,* 210 B.R. 1011, 1015 (Bankr.S.D.Ill. 1997)("Code does not adopt or preserve the state exemptions with all their built-in limitations."); *see generally International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929).

exemption in bankruptcy. Simply put, that result would contravene Code provisions prescribing the treatment of unexceptional prepetition claims and work a result at odds with state law objectives.[10]

Against this federalized scheme of exemption protections, a product of the congressionally-conceived fresh start, Bruin's counter-arguments cannot prevail. Bruin contends that the unique character of the Massachusetts homestead "estate," with its statutory exception for pre-acquisition contract claims, permissibly frustrates § 522(c)'s mandate. In Bruin's view, the "property exempted" by a bankruptcy debtor cannot transcend the exemption's built-in limitations. It argues that the homestead's definitional limitations inhere in the homestead estate's very essence. As an estate, rather than as an operational concept like an "exemption right," the homestead's scope is immutably fixed. Thus, the "property" that can be "exempted" by a debtor within the meaning of § 522(c) is similarly limited, and, Bruin argues, there is no conflict between § 522(c) and state law.

Granted, there are hoary Massachusetts cases that describe the homestead exemption under statutory predecessors to Mass. Gen. Laws ch. 188, § 1 in ways that characterize it as a unique estate, derivative of rights in land. *See, e.g., Silloway v. Brown*, 94 Mass. 30 (1866)(widow's homestead rights are not dependent on dower); *Mercier v. Chace*, 93 Mass. 194 (1865)(widow entitled to homestead in addition to dower); *Richards v. Chace*, 68 Mass. 383 (1854)(debtor holds premises by "two different tenures": fee estate and homestead). But these cases neither address nor control bankruptcy issues. The Massachusetts cases explicate interaction of principles that are peculiarly products of state law. The interplay they describe developed during an era when the rights of one spouse (read wife) without record title were particularly vulnerable to claims of creditors and successors to the other spouse's (read husband's) title. *See, e.g., Weller v. Weller*, 131 Mass. 446, 447(1881)(once wife acquires a homestead estate, subsequent actions creating title to an undivided part of the premises in a stranger will not defeat her homestead unless she has released her rights in accordance with the statute); *Kerley v. Kerley*, 95 Mass. 286, 287 (1866)(homestead is "an estate indeterminate in its duration, and which may continue for the joint lives of the possessor and his wife."); *Silloway*, 94 Mass. at 32 (homestead is titleholder's "estate for life, and for the additional term of the continuous subsequent occupation of his widow or any of his minor children").[11]

Like more conventional exemptions, Massachusetts' homestead has always been a mechanism to "protect the family home" from enforcement of judgments, to carve out humane protections for a destitute "owner and his family." Jordan B. Cherrick, *The Homestead Act: An Important Law to Protect the Family But a Law in Need of Re-*

---

10. If Bruin's objection were successful, the bankruptcy court could not administer the value of the Leichts' homestead consistently with state law principles without abridging express provisions of the Code. For example, to the extent the exemption were reduced or eliminated, it could not be shared among only pre-acquisition contract claimants (or others coming within the state law exemption exceptions) without overriding the Code's distributional priority scheme. *See* §§ 507, 726. It could not be shared among all creditors of the estate (especially administrative claimants) without diluting the protections that state law intended for pre-acquisition contract creditors. And the property could not be set aside for postbankruptcy resort by the excepted creditors without abridging the Leichts' discharge, overruling § 522(c) and, in consequence, diluting the protections afforded designated categories of creditors Congress expressly preferred

in § 522(c). *See In re Whalen–Griffin*, 206 B.R. at 290.

11. The cases cited post-date Massachusetts' enactment of Married Women's Property Acts in 1845 and 1855. *See* Dianne Avery & Alfred S. Konefsky, *The Daughters of Job: Property Rights and Women's Lives in Mid–Nineteenth–Century Massachusetts*, 10 Law & Hist. Rev. 323 (1992). Those statutes reformed women's property rights, providing them the ability to set aside and hold title to premarital property by agreement and, later, without agreement by operation of law. *See id.* at 326 n. 18. But the homestead statute operated in a different context, where the woman did not ordinarily appear as owner of record. As the cases disclose, women's (more particularly widows') rights in homestead property were often under assault by their former spouses' heirs, creditors, and transferees.

*form,* 1980 Mass. L.Rev. 175. And, more to the point, the cumbersome operation of the state exemption (within or without bankruptcy) may well be attributable to archaic concepts that the modern statute still embodies. *See id.* at 176 ("Problems like the estate concept and the declaration requirements have thrown the homestead into obscurity.").

As a consequence, we decline Bruin's invitation to recognize the Massachusetts homestead as so different in character from other exemptions that § 522(c)'s fresh start mechanism cannot operate to enlarge its protections. Thus, the conclusion that the Massachusetts law "conflicts" with the Bankruptcy Code's congressionally-intended operation, and must give way to the Code's preemptive powers, is unavoidable. *See e.g., Rini v. United Van Lines, Inc.,* 104 F.3d 502, 504 (1st Cir.1997)("[A] state statute is void to the extent it is in conflict with a federal statute."); *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608, 610–14 (1st Cir.1995)(applying bankruptcy preemption analysis); *see generally In re Newport Offshore Ltd.,* 219 B.R. 341, 349–55 (Bankr.D.R.I.1998)(explicating bankruptcy preemption principles and collecting authorities).

Our conclusion should not be startling. In the exemption arena, federal courts have, time and again, concluded that the federal fresh start principles promulgated in § 522(c) override state law exemption limitations, even definitional limitations. *See, e.g., Owen,* 500 U.S. at 313–14, 111 S.Ct. 1833; *Davis,* 105 F.3d at 1022–23; *In re Maddox,* 15 F.3d at 1351; *Wachovia Bank & Trust Co., N.A. v. Opperman (In re Opperman),* 943 F.2d 441, 443 (4th Cir.1991); *In re VanZant,* 210 B.R. at 1014–15; *In re Whalen–Griffin,* 206 B.R. at 290–92; *In re Boucher,* 203 B.R. at 13–14; *In re Scott,* 199 B.R. at 591–93; *In re Conyers,* 129 B.R. at 472.[12] Indeed, the 1994 amendments to § 522(f) make it clear that Congress intended a debtor's exemptions (whether state or federal law in their source) to operate in particular, federal-law-ways to advance the policies embodied in the bankruptcy fresh start.[13]

Moreover, it is not startling that bankruptcy law operates this way in the exemption context. Throughout, bankruptcy law relies upon state law to define and establish the fundamental rights and relationships that arrive, with the debtor, at the bankruptcy court's door. It is upon these rights and relationships that federal principles operate to render results consistent with bankruptcy

12. *See generally* Carlson, *supra,* at 57. Referring to the creditor community's campaign to undermine § 522(f)'s effectiveness in the period immediately following its 1978 enactment, Professor Carlson observes:

> If state law allowed exemption of the debtor's equity in a thing (as opposed to the thing-in-itself), then secured creditors could justly argue that the security interest did not "impair" the exemption, as section 522(f)(1)(B) avoidance requires. Since only the debtor equity was exempt, the security interest could eliminate the exemption simply by assuring that no debtor equity existed.
> Such a state-law theory was obliterated by the Supreme Court in *Owen v. Owen,* where the Court implied that security interests on exempt property could be destroyed regardless of the content of state exemption law.

*Id.* (footnotes omitted).

13. The 1994 amendments to § 522(f)(2)(A) require a hypothetical liquidation of exempt property and full or partial elimination of judicial liens (with exceptions) and certain nonpossessory, nonpurchase money security interests, to the extent that the property's value at bankruptcy will not support them. *See, e.g., In re Silveira,*

141 F.3d at 38; *In re VanZant,* 210 B.R. at 1015; *see generally* Carlson, *supra,* at 64–69; Everett, *supra,* at 1349–50. Before the 1994 amendments bankruptcy courts, attempting to reconcile lien avoidance with state law exemption principles, came to a variety of divergent conclusions regarding exactly what "impairment" meant and how lien avoidance operated. *See e.g., In re Garro,* 161 B.R. 869, 869–70 (Bankr.D.Mass.1993)(reconsidering and reversing own holding in *In re D'Amelio,* adopting view of *In re Gonzalez* ); *In re Gonzalez,* 149 B.R. 9, 10–11 (Bankr.D.Mass 1992)(lien avoidable in part, as well as in whole or not at all, to the extent that it impairs the exemption); *Saturley v. Casco N. Bank, N.A. (In re Saturley),* 149 B.R. 245, 248–49(Bankr.D.Me.1993)(judicial lien only encumbers nonexempt portion of property and, therefore, cannot impair exemption); *In re D'Amelio,* 142 B.R. 8 (Bankr.D.Mass.1992)(giving priority to exemption over judicial lien, but leaving the liens fully intact); *In re Cerniglia,* 137 B.R. 722, 725 (Bankr.S.D.Ill.1992)(same); *see generally* Carlson, *supra,* at 64 (referring to "pell-mell [sic] havoc and confusion in the case law"); Everett, *supra,* at 1339–40 (describing different approaches to impairment and avoidance in pre–1994 case law).

policy (results often contrary to state law). *See e.g.*, § 547(c)(3)(B)(purchase money security interest perfected within 20 days escapes avoidance as preference ); *Fidelity Fin. Servs., Inc. v. Fink,* — U.S.—, —, 118 S.Ct. 651, 653–56, 139 L.Ed.2d 571 (1998)(concluding that § 547(c)(3)(B)'s 20 day perfection period overrides state law provisions that give relation-back treatment to perfections accomplished in more than 20 days). *See also e.g.*, § 541(c)(1)(certain interests of the debtor become property of the estate notwithstanding state laws that restrict transfers by debtor or that modify or terminate the debtor's ownership interests upon bankruptcy); §§ 1123, 1142 (plan and debtor/entity must conform to sections' requirements notwithstanding applicable nonbankruptcy law); § 1322(c)(1)(bestowing home mortgage cure rights on debtors up to the date of the foreclosure sale, "notwithstanding applicable nonbankruptcy law").[14]

### f. Lien Avoidance Under § 522(f).

The foregoing analysis breaks our conundrum's circularity. Having reached the conclusion that § 522(c) preempts the Massachusetts homestead exemption's exception for pre-acquisition contract claims, § 522(f)(1)'s application is straightforward. There is little left to say.

■ Bruin's lien is a "judicial lien" within the meaning of the Code. *See* § 101(36)(" '[J]udicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding[.]") And, given our earlier conclusion, there is no remaining dispute that Bruin's lien "impairs" the Leichts' exemption and that application of § 522(f)(2)(A)'s formula

calls for its total avoidance. *See supra* note 5.

### II.

### Does § 552(f)'s Application to Bruin's Lien Effect an Unconstitutional Taking?

Bruin bears on beyond the statutory argument. It asserts that § 552(f)'s operation against its lien works an impermissible, uncompensated taking of its lien. We disagree.

### a. Undertaking Takings Analysis

■ The Constitution expressly invests Congress with power to enact national bankruptcy legislation: "The Congress shall have Power ...[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. Art. I, § 8. Accordingly, Congress has broad authority to enact laws that shape, impact, and alter the contractual and property interests of debtors and creditors. *See generally Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).

■ Nevertheless, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Security Indus. Bank,* 459 U.S. 70, 75, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). *See also Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593 (1935)("The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."). As it relates to this case, the Fifth Amendment provides that Bruin's "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

14. *See generally* Lawrence Ponoroff, *Exemption Limitations: A Tale of Two Solutions,* 71 Amer. Bankr.L.J. 221 (1997):

> The substantive law of bankruptcy is federal law of course, but bankruptcy practice has always involved a complex interplay of state as well as federal law. Ranging from the validity and priority of liens, to the strong-arm powers of the trustee under Bankruptcy Code § 544, to the determination of the property comprising the assets of the estate, application of many bankruptcy rules depends on state law characterization.

*Id.* at 221 (footnotes omitted). *See also Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)(observing that "[p]roperty interests are created and defined by state law," and remain so when involved in a bankruptcy proceeding unless "some federal interest requires a different result"); 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.LH[3][a](15th ed. 1997)("[T]he existence and nature of the debtor's interests in property, and of his or her debts, are determined by nonbankruptcy law.").

### b. Section 522(f) Takes on Bruin's Lien

Before we reach the meat and bones of takings analysis, we must make a point that simplifies our task considerably: In the case before us, § 522(f) is being applied to a lien that arose after the statute's enactment (or effective date).[15]

There is no dispute that the impact of § 522(f) on Bruin's judicial lien is prospective. Lien avoidance powers have been part of the federal bankruptcy laws since 1898. *See* 11 U.S.C. § 107 (1898). Section 522(f), enacted as part of the Bankruptcy Reform Act of 1978 became effective on October 1, 1979. *See* 95 Stat. 598, § 402 (1978). The most recent amendment to § 522(f) became effective October 24, 1994. *See* 103 Stat. 394, §§ 303, 304, 310 (1994)(clarification of subsection (f) impairment calculation, changes to tools of trade provision, and increased protection of alimony and child support liens); *id.* § 702 (effective date is enactment date of October 22, 1994). Bruin sued the Leichts to collect on its note on March 24, 1995, and obtained its lien, the "property interest" assertedly taken from it, when it recorded its attachment writ on April 4, 1995. Thus, Bruin is left to argue that its lien was impermissibly "taken" by operation of § 522(f)(1), even though the section, including the latest, clarifying revisions to it, was on the books well before the lien arose.

In this way, Bruin's argument places us a step beyond the takings challenge to § 522(f) addressed by the Supreme Court in *Security Indus. Bank.* There the Court concluded that Congress intended § 522(f)(2) to operate only prospectively, not retrospectively.[16] It declared:

"Accordingly, in the absence of a clear expression of Congress' intent to" apply § 522(f)(2) to property rights established before the enactment date, "we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the" Takings Clause.

459 U.S. at 82, 103 S.Ct. 407 (quoting *N.L.R.B. v. Catholic Bishop of Chicago,* 440 U.S. 490, 507, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979))(footnote omitted). The Court cited a non-taking's case, *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914), for the rule that courts should construe statutes to apply prospectively to limit their impact on pre-established property rights. *See Security Indus. Bank.,* 459 U.S. at 79–80, 103 S.Ct. 407. In laying forth this rule, the *Holt* Court stated: "We do not need to consider whether or how far in any event the constitutional power of Congress would have been limited." *Holt,* 232 U.S. at 639–40, 34 S.Ct. 459.

Strictly speaking, *Security Indus. Bank* did not declare that § 522(f)'s prospective application would not amount to a taking, although some courts have found the question (and its answer) implicit in the Supreme Court's opinion. For example, the Seventh Circuit stated in *In re Thompson:*

> The conclusion that section 522(f), when [,]as here[,] it is applied prospectively, does not violate the takings clause of the Fifth Amendment is the premise of [*Security Indus. Bank* ], which construed the statute to be applicable only prospectively in order to obviate a constitutional question. The constitutionality of section 522(f) is not an open question, at least at our level.

867 F.2d 416, 422 (7th Cir.1989) (citations omitted). *See also In re Jacobs,* 154 B.R. 359, 361 (Bankr.S.D.Fla.1992.)

▇▇▇ Like others, we take *Security Indus. Bank's* teaching as a strong signal, though

---

15. As a successor in interest to the FDIC on the July 8, 1988, Note, Bruin may have other "property" interests at stake in the Leicht's bankruptcy. However, our takings inquiry is limited to avoidance of Bruin's judicial lien on the Leichts' residence, the only interest Bruin asserts is unconstitutionally avoided pursuant to § 522(f). Section 522(f)(1) leaves untouched whatever other rights Bruin may have as a result of the note.

16. Some lower courts applying § 522(f) have concluded that Congress intended the Bankrupt-

cy Reform Act to apply retroactively on rights that vested before its effective date. *See Hertzberg v. Hirschfield & Sons, Inc. (In re Caro Prods., Inc.),* 746 F.2d 349, 352 (6th Cir.1984); *Webber v. Creditrift of America (In re Webber),* 674 F.2d 796, 801–02 (9th Cir.1982); *Burkholder v. National Cent. Bank (In re Burkholder),* 11 B.R. 346, 349–50 (Bankr.E.D.Pa.1981); *Jenkins v. Northwest Georgia Bank (In re Jenkins),* 11 B.R. 958, 960–61 (Bankr.N.D.Ga.1981).

short of an express holding, that prospective application of § 522(f)'s lien avoidance provisions does not offend the Fifth Amendment. Taking the teaching as less than gospel, however, would not change our conclusion. Assuming that *Security Indus. Bank* has not foreclosed the inquiry, we can readily determine that the statute has not effected an impermissible taking of Bruin's lien.[17]

For Bruin to succeed we must be satisfied that: (1) the application of § 522(f) to his lien is governmental action; (2) that his judicial lien is "property" of a kind that the Fifth Amendment protects; (3) that the application of § 522(f)(1) to the his judicial lien actually took a property interest from him; and (4) that Congress went "too far" when enacting § 522(f)(1), weighing the burden to Bruin of lien avoidance against the public benefit achieved through the congressional preservation of the homestead exemption.[18] Even assuming that Bruin could satisfy the other elements required to demonstrate an unconstitutional taking, we are convinced that the extent and character of the property involved (i.e., the lien) were circumscribed by the federal lien avoidance remedy at the time the lien was created and, therefore, that § 522(f)'s operation did not take any property from Bruin viewed under the third element of our takings inquiry.

Though a protected interest under the Fifth Amendment, Bruin's lien is no more than what the law defined it to be at the time it arose. And here is the Achilles heal of Bruin's takings challenge. The lien was born subject to the Leicht's right to avoid it pursuant to § 522(f)(1). Ruling on a uniformity challenge to bankruptcy exemptions, the Supreme Court early recognized the defining role exemption laws play vis-a-vis liens created after their enactment. It is, the Court noted,

> a rule of the law to subject to the payment of debts under its operation only such property as could by judicial process be made available for the same purpose. This is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors.

*Hanover Nat'l Bank*, 186 U.S. at 189, 22 S.Ct. 857 (quoting *In re Deckert*, 2 Hughes, 183, Fed. Cas. No. 3,728).[19] Other courts

---

17. We are mindful of the rule that courts should avoid reaching a constitutional question if the resolution of the matter can rest on other grounds. *See Security Indus. Bank.*, 459 U.S. at 78, 103 S.Ct. 407 (exploring first whether § 522(f)(f)(2) can be construed to avoid the constitutional question, describing this as a "cardinal principle")(quoting *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) quoting *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)); *see also Blair v. United States*, 250 U.S. 273, 279, 39 S.Ct. 468, 63 L.Ed. 979 (1919)("Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it."); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936)(Brandeis, J., concurring)(quoting passage from *Blair v. United States*). As Bruin has failed to convince the court that § 522(f) has been misapplied to his lien, *see* discussion *supra* Part I, his alternative constitutional argument must be addressed.

18. We note that: "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality...." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). It is Bruin's hefty burden to overcome this presumption. *See id.* (party challenging the a congressional act on due process grounds has the burden to prove unconstitutionality); *Elsner v. Aman Collection Serv., Inc. (In re Elsner)*, 35 B.R. 115, 117 (Bankr.D.S.D.1983)(party challenging § 522(f) as a taking has burden of overcoming the presumption of constitutionality).

19. In this sense, nothing has been "taken" from Bruin because at the time he commenced the foreclosure,

> he knew or should have known that his rights were circumscribed by the federal legislation. If his property rights are defined by reference to existing law, obviously no taking has occurred. Thus, the proposition that the fifth amendment imposes limitations on even [this] purely prospective restriction[] of [Bruin's] rights ... seems to assume that the property rights held by secured creditors are in some sense anterior to positive law.

James Stevens Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth*

have observed this simple principle in the context of a § 522(f) challenge. *See In re Thompson*, 867 F.2d at 422 ("[L]ien avoidance is not a taking when it is authorized *before* the creditor makes the secured loan in question ....."); *Dickens v. Snellings (In re Snellings)*, 10 B.R. 949, 956 (Bankr.W.D.Va. 1981)("[T]hose liens created after the enactment of the Bankruptcy Reform Act of 1978 ... are implicitly subject to the debtor's power to avoid liens on exempt property under section 522(f).").

Whether or not Bruin was aware of it at the time,[20] Bruin's judicial lien was, at its inception, an interest in property subject to and limited by the Leicht's § 522(f) avoidance powers. This is the insurmountable hurdle that Bruin's challenge to § 522(f)'s prospective effect cannot clear. *See Radford*, 295 U.S. at 589, 55 S.Ct. 854 ("The [congressional bankruptcy] power over property pledged as security after the date of the Act may be greater than over property pledged before[.]"); *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 404 (D.C.Cir.1997)("Purely prospective burdens do not present the same constitutional difficulties as retroactive ones as the affected

parties can take measures to protect themselves against, or at least mitigate, the otherwise resulting loss."); *In re Howard*, 11 B.R. 954, 957 n. 16 (Bankr.N.D.Ind.1981) ("Because retrospective laws interfere with the legally induced and settled expectations of private parties to a greater extent than prospective measures, retroactive measures have traditionally been subjected to stricter scrutiny.").[21]

Therefore, protestations that § 522(f) "completely destroyed the property interest that Bruin had in the [Leichts'] Residence" fail. Bruin's lien, its "property interest," arose *subject to* the Code's lien avoidance mechanisms.[22] Section 522(f)(1), as applied here, was (and remains) the positive law context in which Bruin's lien exists. That law's application to the lien, and the resulting avoidance of the lien through the Leichts' bankruptcy remedy, effected no diminution in, no "taking" of, Bruin's rights.

## Conclusion

For the reasons set forth above, we conclude that the court below properly applied §§ 522(c) and 522(f) to avoid Bruin's judicial lien on the Leichts' Massachusetts homestead and that the avoidance of Bruin's lien

*Amendment and the Bankruptcy Clause*, 96 Harv. L.Rev. 973,987 (1983). *See also id.* at 987 n. 59 (expressing an inclination to conclude that a "truly prospective statute" could not present a takings concern).

**20.** Many courts wrestling with the impact of new laws on property rights have examined whether the aggrieved party had "notice" of the disputed provision. *See Commonwealth National Bank v. United States (In re Ashe)*, 712 F.2d 864, 868 (3d Cir.1983)(concluding that judgment notes executed after the enactment of the 1978 amendments to § 522(f)(1) were taken with notice of the changes and "whatever interest [the lien holder] acquired was taken subject to the provisions of an already enacted federal statute"); *In re Caro Prods., Inc.*, 746 F.2d at 351 (deciding that creditor's notice of the act in the gap period between enactment and effective date meant that there was not a "substantial constitutional question"); *In re Webber*, 674 F.2d at 803–04 (determining that a creditor, whose security interest arose after the section enactment but before its effective date, had imputed knowledge of § 522(f), had "notice," and, thus, no takings claim); *accord In re Habeeb–Ullah*, 16 B.R. 831, 832 (Bankr.W.D.N.Y.1982). The case cited above deal with instances in which the attacked law was enacted but not yet effective. It is also a

kindred concept to a element that takes center stage in a full-fledged takings inquiry: the scope of the aggrieved party's reasonable, investment-backed expectations vis-a-vis the property interest involved.

**21.** The fact that this is a law and not a provision in a contract distinguishes Bruin's challenge from the successful challenge of the materialmen in *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The contract provision in *Armstrong* allowed the government, upon default of the shipbuilding corporation, to terminate the contract and require the shipbuilder to convey title to the government. This course of events ensued. Because of the doctrine of sovereign immunity, the materialmen's liens were unenforceable. Though the contract between the government and the shipbuilder predated the materialmen's liens, the Court concluded that the materialmen's liens did not attach subject to these limitations in a contract to which the materialmen were not parties. 364 U.S. at 45–46, 80 S.Ct. 1563.

**22.** To re-employ the metaphor, preexisting federal lien avoidance rights are limitations that inhere in the essence of Bruin's judicial lien: the holes, if you will, in its own Swiss cheese construct.

did not amount to a constitutionally impermissible taking.

The bankruptcy court's order is AFFIRMED.