EDITH H. JONES, Circuit Judge:
In 1987, Cullen and Karen Davis filed for bankruptcy relief and claimed as their exempt Texas homestead a residence valued at $500,000 which they owned free and clear. Cullen’s former wife Sandra obtained a judgment from the bankruptcy court declaring that her $250,000-plus claim for alimony, child support, and maintenance was nondis-chargeable under 11 U.S.C. § 523(a)(5). To enforce the nondischargeability judgment, Sandra sought turnover relief in the form of an order permitting her to foreclose on Cullen’s and Karen’s homestead. The bankruptcy court and the district court held that she could not levy on the debtors’ homestead because it is protected from execution under Texas law, and 11 U.S.C. § 522(c)(1), a provision of the Bankruptcy Code, did not preempt the debtors’ state-law rights. A split panel of this court reversed the lower courts. See Davis v. Davis (In re Davis), 105 F.3d 1017 (5th Cir.1997). This case was selected for en banc rehearing because of its importance to federal bankruptcy law and to state exemption rules. We conclude that the lower courts were essentially correct and affirm their judgments denying Sandra the relief she seeks.
FACTUAL AND PROCEDURAL HISTORY
When Sandra and Cullen divorced in 1968, they executed a property settlement, support and child custody agreement, and divorce judgment (collectively “divorce judgment”), and Cullen agreed to make monthly payments to Sandra through January 1, 1991, with certain contingent payments thereafter. In 1979, Cullen married Karen Davis. In 1984, Cullen and Karen purchased a house and lot for $750,000.
In 1987, Cullen and Karen stopped making payments to Sandra as required by the divorce judgment and filed for Chapter 7 bankruptcy relief, followed later by conversion to Chapter 11. As has been noted, Cullen’s and Karen’s costly, lien-free home was claimed as exempt property pursuant to § 522(b)(2)(A) and valued at $500,000 on their schedules.
Armed with the bankruptcy court’s judgment that Cullen owed her $300,000 in nondischargeable alimony, maintenance and child support obligations and associated attorneys’ fees, Sandra requested that the bankruptcy court seize and sell the debtors’ homestead under Texas Civ. Prac. & Rem. Code § 31.002(a), applicable to the action under Bankr.R. 7069 and Fed.R.Civ.P. 69. Because a debtor’s homestead is exempt from attachment, execution, or seizure under Tex. Const, art. XVI § 50 and Texas Property Code § 41.002(a), the bankruptcy court determined that the debtors’ homestead was not subject to the Texas turnover statute. In so doing, the court rejected Sandra’s argument that § 522(c)(1) of the Bankruptcy Code preempted the Texas homestead exemption for nondischargeable debts related to family support as defined in § 523(a)(5). Sandra appealed this ruling to the district court, which affirmed for substantially the same reasons. Sandra timely appealed to this court. We review the lower courts’ interpretation of the Bankruptcy Code de novo. See Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir.1994).
THE BANKRUPTCY EXEMPTION STATUTE
At issue in this case are the meaning and preemptive force, if any, of 11 U.S.C. *478 § 522(c), a provision that is part of the Bankruptcy Code’s framework for the treatment of exempt property. Understanding § 522(c) begins with a description of the lengthy provision governing exemptions of which it is a part. See United Sav. Ass’n v. Timbers of Inwood Forest Assocs., Inc., 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (“Statutory construction, however, is a holistic endeavor”).
Federal bankruptcy law affords debtors a fresh start by enjoining collection of discharged debts, § 524, and by permitting the debtors to retain certain limited amounts and types of exempt property, § 522. Exemptions have been perennially controversial, because they reduce assets potentially available to pay creditors and arouse charges of abuse of bankruptcy. Exemptions are also fought over by states’-rights advocates, who value the traditional state legislative prerogative to adjust exemptions to local economic conditions, and by advocates of federal uniformity, who want to raise — or lower — exemptions based on conceptions of national equity. Congress allayed the controversy between state and federal advocates by providing in the 1978 Bankruptcy Code that states could opt out of prescribed federal exemptions altogether or could allow their citizens to select either schedule. See 11 U.S.C. § 522(b).
Exemptions are easy to claim. The debtor files a list of exempt property protected by applicable federal or state law with the court. See 11 U.S.C. § 522(l). If the exemptions are not objected to, the property becomes exempt and unavailable to be levied on by pre-petition creditors or managed by the trustee.
The right to claim exemptions is closely guarded. Waivers are unenforceable. See 11 U.S.C. § 522(e). A debtor may claim exemptions even on property recovered by the trustee from third parties. See 11 U.S.C. § 522(g). The debtor may “avoid the fixing of a lien” to the extent it impairs an exemption. 11 U.S.C. § 522(f). Both husband and wife may claim exemptions individually. See 11 U.S.C. § 522(m).
The consequences of claiming exemptions are delineated in § 522(c). Generally, unless a case is dismissed, exempt property may not be held liable to repay any pre-petition debt of the debtor. This very broad protection requires qualification, at least to the extent that otherwise enforceable liens on exempt property must remain viable, § 522(c)(2)(A), as must properly filed tax liens, § 522(c)(2)(B). Only three other types of pre-petition claims against the debtor have any viability against property after it is declared exempt: certain nondisehargeable tax claims, nondisehargeable family support claims, and claims of federal depository institutions regulatory agencies.[1]
Moving from the general discussion of exemptions to the case before this court, the narrow terms of exception from the protected status of exempt property are described by the statute as follows:
(c) Unless the ease is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;
(2) a debt secured by a lien that is—
(A)(i) [ & ii] [not avoided or void under specified provisions of this title]; or
(B) a tax lien, notice of which is properly filed; or
(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.
11 U.S.C. § 522(c).
In order to prevail in this case, Sandra must demonstrate that § 522(c) creates a basis for execution on Cullen’s homestead to enforce her nondisehargeable divorce judg *479 ment and that, in enacting this provision, Congress expressly or impliedly preempted the Texas homestead law.[2]
Sandra’s argument as to § 522(c) is simple. She reads the section to say that property exempt from payment of discharged debts is “liable” for the types of debts listed as exceptions. But the statute does not say this. Rather, it states that exempt property “is not liable ... for any debt ... except ... [a nondischargeable divorce judgment].” Her argument did not persuade the bankruptcy court, who wrote:
[Section 522(c) ] does not create or establish liability. It enjoins most liability imposed by non-bankruptcy law upon exempt property but does not enjoin all liability for all debts. While it does not impose an injunction against liability on exempt property for § 523(a)(1) or (a)(5) debts, it also does not prevent non-bankruptcy law from imposing such an injunction. Indeed, Texas has done so.
Davis v. Davis(In re Davis), 170 B.R. 892, 898 (Bankr.N.D.Tex.1994). At best, the statutory language is ambiguous from the standpoint of imposing the liability Sandra seeks. Viewed in light of the exemption framework outlined above, however, Judge Felsenthal’s explanation is more plausible than Sandra’s. In other words, § 522(c) sought to leave exempt property exposed to postbankruptcy liability only to the extent it would have been exposed if the bankruptcy had not occurred. This interpretation is the most plausible reading of § 522(c) for several reasons.
Unless Congress expressly legislates otherwise, see infra, the policies of bankruptcy law have little bearing on property after it is exempt from the debtor’s estate. Such property is no longer available for distribution to creditors, and it is not subject to charge for bankruptcy administrative fees. The debtor may use the exempt property without claims of pre-petition creditors hanging over his head. Of course, Congress deemed necessary some narrow exceptions to this policy of a fresh start for the debtor’s exempt property. Thus, purchase money liens on exempt property had to be protected to insure a free flow of credit for purchases of property in markets like residential real estate. Further, tax liens were preserved against exempt property because the contrary result— voiding, e.g., school tax liens on a homestead — is unthinkable. Section 522(c)(2) deals with these claims by simply leaving them unaltered on exempt property. The section does not “create” or “impose” liability, nor does it override or add to state law or federal tax law. The holders of those sorts of unaltered claims would have to proceed via applicable non-bankruptcy collection schemes to realize on their security against exempt property.[3]
Yet the same introductory language to § 522(c) that leaves these liens and underlying state and federal law collection schemes unaltered is argued to have a different mean *480 ing with respect to Sandra’s nondischargeable divorce judgment. When Sandra contends that the language “creates” a “liability” over and above the protection her lien is accorded in state law, she means that the bankruptcy court can order execution on the homestead to satisfy the divorce judgment. This contention flatly contradicts standard canons of statutory interpretation, for the same language in a single statutory provision cannot have two different meanings. See Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (espousing “normal rule of statutory construction” that “identical words used in different parts of the same act are intended to have the same meaning”).
Sandra’s position is also hard to justify if applied to nondischargeable tax debts, the other non-lien debts specified in § 522(c)(1).[4] That is, while a sense of compassion for ex-spouses and children, who are the obligees of nondischargeable family support obligations, provides impetus for “creation” of liability against exempt property, the balance is not so easily struck in favor of “creating” liability of exempt property to pay nondischargeable, non-liened tax debts. Congress might have made the choice to “create” liability of exempt property for both types of nondis-chargeable debt, but this is unlikely. Taxing authorities benefit from favorable lien laws and other extraordinary enforcement sanctions and penalties, and these prerequisites render additional protections in § 522(c) superfluous. Linguistically, Sandra’s argument must furnish the same protection to nondis-chargeable non-liened tax obligations as she asserts it does for nondischargeable family support obligations. But the mandated linguistic parallelism exposes an illogical result.
Notwithstanding our view that Sandra’s construction of § 522(c) creates internal inconsistencies in that provision, bits of legislative history and the import of § 522(f) may be cited to bolster her position. These arguments are not without force, but they are ultimately unconvincing.
In 1990, Congress amended § 522(c)(3), creating an exception designed to prevent “bank insider kingpins” from hiding behind state exemptions to retain their “ill gotten gains.” 136 Cong. Rec. E3686 (daily ed. Nov. 2,1990) (statement of Rep. Schumer); see also 11 U.S.C. § 522(c)(3). A statement of Senator Biden during Senate consideration of the provision suggests that the proposed legislative language
specifically pre-empts State homestead laws, which would otherwise allow S & L crooks to retain lavish homes through the excessive protections in some State bankruptcy laws.
136 Cong. Rec. S17,602 (daily ed. Oct. 27, 1990). Isolated statements of individual legislators represent neither the intent of the legislature as a whole nor definitive interpretations of the language enacted by Congress. See Board of Educ. v. Rowley, 458 U.S. 176, 204 n. 26, 102 S.Ct. 3034, 3049 n. 26, 73 L.Ed.2d 690 (1982). Further, these particular statements post-date by twelve years the enactment of the prefatory language in § 522(c) with which we are here concerned. For that additional reason, they are not probative. See United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960) (“[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.”).
Sandra also contends that § 522(c)(1) is not intended to serve simply as a lien preservation provision, because that purpose is fulfilled by § 522(f), which provides in part that while a debtor may avoid the fixing of a lien on exempt property, the debtor may not avoid a judicial lien for alimony or family support. If § 522(c)(1) does not have the broader purpose of permitting execution against exempt property, then it is allegedly redundant of the lien preservation function of § 522(f)(l)(A)(i). But § 522(c) is not duplica-tive of § 522(f)(1)(A). The former provision states the effect of an exemption on liability for each kind of debt specified, while the latter provision states when a party may avoid the fixing of a pre-petition lien on *481 exempt property. The two sections overlap in part, but their scope and purpose differ.
Nor does the Supreme Court’s interpretation of § 522(f) shed light on the relation between that provision and § 522(c), at least not in any sense helpful to Sandra. In Owen v. Owen, the Supreme Court discussed whether under § 522(f) a state homestead exemption (with its state law limitation) should be treated differently from the federal exemption insofar as the § 522(f) federal lien avoidance provision is concerned. See 500 U.S. 305, 313, 111 S.Ct. 1833, 1838, 114 L.Ed.2d 350 (1991). The Court concluded that “[njothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently.” Id. In this case, the provision in § 522(c)(1) for continuing liability for certain debts applies equally to both federal and state exemption schemes; in each scenario, liability persists after bankruptcy to the same extent it did before. It is only with respect to the enforcement of such liability, a matter which Congress has left to state mechanisms, that the results differ.
A holistic reading of § 522(c)(1) undermines Sandra’s theory that the provision is literally self-executing. She has confused her right with her remedy. This error is exposed by applying her reasoning to other debts that § 522(e) preserves notwithstanding property exemptions, i.e. certain tax debts, federal depository regulators’ debts, and debts already secured by a valid lien. If Sandra’s reading of § 522(c) is correct, then a homestead could be sold to repay non-liened tax debt, made nondischargeable according to § 523(a)(1), or indeed to pay off an obligation owed to the FDIC without recourse to federal or state lien or homestead protection laws. The impact of such a construction would put the preferred creditors in a better position after the debtor has filed bankruptcy than before and may create an incentive for filing involuntary bankruptcies. In effect, Sandra’s proffered construction of § 522(c) does not merely withhold any special protection offered by bankruptcy law, but overrides nonbankruptcy law and has the effect of denying the debtor even exemptions that would have been available outside of bankruptcy. Further, this interpretation seriously disadvantages a debtor subject to the listed obligations, and it actively discourages a large number of potential debtors who are faced with the types of obligations excepted from § 522(c) from seeking bankruptcy relief. Congress surely would not have reached this consequential result without legislating more explicitly.[5]
For all these reasons, we conclude that § 522(c)(1) does not “create” “liability” of exempt property for specified debts following bankruptcy. Instead, the section permits creditors holding such claims to proceed against the property after bankruptcy based on the rights and remedies they would have had under state law if bankruptcy had not been filed.
PREEMPTION
To prevail in her approach to § 522(c), Sandra must show that it preempts Texas law, thus subjecting Cullen’s homestead to seizure and sale to satisfy her nondischargeable divorce judgment, despite the express prohibition on such foreclosure contained in the Texas constitution and statutes. See Eggemeyer v. Eggemeyer, 623 S.W.2d 462, 466 (Tex.App.-Waco 1981, writ dism’d) (homestead not subject to foreclosure to secure payment of accrued child support).
The Supremacy Clause enables Congress to override state laws if it so intends. Deference to our federalism counsels a presumption that areas of law traditionally reserved to the states, like police powers or property law, are not to be disturbed absent the “clear and manifest purpose of Con *482 gress.”[6] But preemption may be implied if state and federal laws conflict or a state law thwarts the “accomplishment and execution” of congressional intent. See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm’n, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Moreover, if Congress has passed a pervasive federal legislative scheme leaving states no room to supplement, then state law will also be preempted. See First Gibraltar, 19 F.3d at 1039 (citing Pacific Gas, 461 U.S. at 204, 103 S.Ct. at 1722). Sandra has attempted to demonstrate (1) express preemption; (2) that §§ 523(a)(5) and 522(c) of the Bankruptcy Code create so pervasive a set of regulations as to impliedly preempt state laws regarding exempt property, and (3) that § 522(c) conflicts irreconcilably with the Texas homestead exemption. Express preemption is precluded by our rejection of Sandra’s proffered interpretation of § 522(c).
The Bankruptcy Code’s “policy” of strengthening enforcement of family support obligations is a weak reed on which to support implied.preemption. Although § 522(c) entitles these obligations to special status against property otherwise exempt in bankruptcy, neither that provision nor § 523(a)(5), the provision for nondischargeability of family support obligations, which § 522(c) incorporates, expresses the full intent of the Code. A debtor who owes family support obligations is afforded a great deal of latitude and protection. First, the filing of the bankruptcy case automatically stays payments of support obligations, as it does all other payments to pre-petition creditors. See 11 U.S.C. § 362(a). An ex-spouse deprived of certain family support payments must file an adversary proceeding in bankruptcy court to enforce nondisehargeability, and even then, the court may order reduction of certain payments if it finds that the defaulting spouse would suffer “hardship.” See 11 U.S.C. §§ 523(c), 523(a)(15). A debtor may obtain a Chapter 7 discharge or confirm a Chapter 13 plan without being current in family support obligations. Bankruptcy law presently contains neither a pervasive or consistent approach toward family support obligations.
Reliance on the exemption provision of the Code as a source of implied preemption is also misplaced. Congress specifically preserved state exemptions under § 522(b), rejecting a proposal for uniform federal exemptions.[7] Congress allowed states to define the existence and limits of exemptions.[8] By expressly preserving a role for the state law in the Bankruptcy Code, it is clear that Congress has not devised a policy on federal exemptions so pervasive as to leave no room for a state to supplement bankruptcy law with respect to exemptions.
Even more important, there is no direct conflict between compliance with the Bankruptcy Code and the Texas homestead law. We concluded earlier that in specifying certain debts for which the exempt property is still liable, § 522(c) leaves the parties to their state law collection rights. To execute a judgment against Texas property, a judgment creditor must rely on the state mechanism for enforcement. Although Texas law does not permit the seizure of a homestead for a family support obligation, Sandra can still perfect a judgment lien against the property in question, even if it is a homestead. The property is thus liable, although it is immune from seizure while it is a homestead.[9] This is all § 522(c)(1) requires. See *483 Davis, 188 B.R. at 550. Section 522(c)(1) assures that the debtor remains ultimately liable, and the property or proceeds from the sale of property may be subject to seizure if the property ever ceases to be the debtor’s homestead.[10] Because the Texas homestead law does not bar the attachment of a perfected lien to homestead property, it does not conflict with § 522(c)(1).
Section 522(c) also fails to conflict with Texas law because it is not self-executing, it provides no means for enforcing the creditor’s right. Fed.R.Civ.P. 69(a) explains why:
Process to enforce a judgment for the payment of money shall be a writ of execution .... The procedure on execution, in proceedings on and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in ivhich the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.
(emphasis added). Pursuant to Rule 69(a), incorporated by Bankr.R. 7069, Texas’s enforcement mechanisms govern in bankruptcy court in the absence of a federal execution statute. The Texas turnover statute does not permit seizure and sale of a homestead to satisfy a family support obligation. See Tex. Civ. Prac. & Rem.Code § 31.002.
CONCLUSION
Cullen and Karen Davis were entitled to exempt their homestead from claims of creditors under Texas and federal bankruptcy law, and they did so. Sandra is entitled, under § 522(c)(1), to enforce her nondis-chargeable judgment for family support obligations notwithstanding the exemption claim, but her remedy must be in accord with Texas law, since § 522(c) is not an execution statute and does not preempt relevant Texas law. Either Texas or, perhaps, the U.S. Congress could alter this situation, but it is our duty to enforce the present statute.
The judgment of the district court, affirming the judgment of the bankruptcy court, is AFFIRMED.

. Further, if a debtor claims an exemption on property recovered from a third party by the trustee, the exempt property may be used to pay the costs of administration. See 11 U.S.C. § 522(k).

. We have been unable to locate any appellate cases in which a court has directly discussed the effect of § 522(c) on state-created exemptions. Some courts have construed § 522(c) in conjunction with § 522(f) in the course of avoiding certain liens on exempt property. See, e.g., Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 679-80 (1st Cir.1999) (Reavley, J.). However, no court has held that § 522(c) establishes a separate means of enforcing liens against exempt property. Indeed, in cases involving the viability of nondischargeable federal tax liens, bankruptcy courts have cited the preemptive effect of the federal tax lien enforcement provision — not Bankr.R. 7069 — as a means of levying on otherwise exempt property. See, e.g., In re Reed, 127 B.R. 244, 247-48 (Bankr.D.Haw.1991) ("[F]ederal law governs what is exempt from federal levy.”); Crow v. Long, 107 B.R. 184, 186-87 (E.D.Mo.1989). Thus, these cases do not control, or otherwise affect, our analysis of § 522(c).

. The district court drew this distinction as well:
Section 522(c)(2) allows exempt property to be held liable for certain debts already secured by a lien. If § 522(c) were an execution statute, it would have no cause to rely on existing liens to have effect. That liability as to § 523(a)(1) and § 523(a)(5) debts is not defined by pre-existing liens does not change the defining — as opposed to executory — nature of § 522(c). Rather, it suggests that for these debts a lien or other means of executing on the judgment need not precede the claiming of exemptions. The creditor, after the debtor has declared bankruptcy and claimed exemptions pursuant to § 522(b), may still pursue these debts by whatever means are available, i.e., state-law remedies for execution on a judgment.
Davis v. Davis (In re Davis), 188 B.R. 544, 551 (N.D.Tex.1995).

. Many tax debts are rendered nondischargeable by § 523(a)(1), a provision which is designated an exception to § 522(c) in the same clause with the reference to family support obligations. See 11 U.S.C. § 522(c)(1).

. The bankruptcy court pointed out how easily an amendment of § 522(c)(1) could have expressed the affirmative mechanism for the collection of family support obligations that Sandra advocates:
(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under § 502 of this title as if such debt had arisen, before the commencement of the case.
(1) Notwithstanding this or any other federal or state injunction of liability for exempt property, exempt property shall be liable for debts of a kind specified in § 523(a)(5) of this title.
Davis, 170 B.R. at 897 (emphasis added).

. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); First Gibraltar Bank, FSB v. Morales, 19 F.3d 1032, 1039 (5th Cir.1994) (citing California v. ARC Am. Corp., 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)).

. See Report of the Comm’n on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., pts. I & II, at 4-503 (1973).

. See id. at 549-50.

.The Texas Supreme Court has observed that a lien is never valid (in the sense of being enforceable) unless it secures payment for certain debts provided for in Tex. Const. Art. XVI, § 50. See Benchmark Bank v. Crowder, 919 S.W.2d 657, 660 (Tex.1996). This does not mean, however, that a lien that is not valid and enforceable is completely without effect. As one Texas appellate court has remarked,
[u]nder [Texas Property Code] statutory provisions, a judgment lien is "perfected," or brought into existence against a debtor's property, by recording and indexing an abstract of *483 the judgment in the county where the property lies. The debtor’s homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting to enforce the perfected lien.
Exocet Inc. v. Cordes, 815 S.W.2d 350, 352 (Tex. App.-Austin 1991, no writ).

. As a principle of Texas law, "a judgment lien attaches to the judgment debtor's interest if he abandons the property as his homestead before he sells it.” Hoffman v. Love, 494 S.W.2d 591, 594 (Tex.Civ.App.-Dallas 1973, no writ). For example, if the debtor acquires a second homestead before selling the first homestead, the first homestead is deemed abandoned and is no longer exempt from seizure. See England v. Federal Deposit Ins. Corp., 975 F.2d 1168, 1175 (5th Cir.1992). Furthermore, if the debtor retains the property as his homestead until he sells it, unless the debtor reinvests the proceeds of the sale in another homestead within six months from the date of sale, the proceeds are subject to seizure by creditors. See Sharman v. Schuble, 846 S.W.2d 574, 576 (Tex.App.-Houston [14th Dist.j 1993, no writ); Tex. Prop.Code § 41.001(c). Even during this six month window, if the debtor purchases a new homestead any remaining proceeds from the sale of the first homestead are instantly rendered non-exempt. See England, 975 F.2d at 1174.
These principles allayed our concerns about possible mootness arising from Cullen Davis's sale of one homestead and timely purchase of another homestead while this case was pending.