**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 99-30177**

**CLEANARD J. JOHNSON,**

**Plaintiff-Appellee,**

**VERSUS**

**R. McNEIL; F. JOHNSON; C. MARTIN LENSING,**
**Warden, Hunt Correctional Center,**

**Defendants-Appellants.**

Appeal from the United States District Court
For the Middle District of Louisiana

June 28, 2000

Before KING, Chief Judge, GARWOOD and DeMOSS, Circuit Judges.

PER CURIAM:

After the district court granted summary judgment in favor of Defendants Raymond McNeil, Frank Johnson, and C.M. Lensing in Plaintiff Cleanard J. Johnson's pro se civil rights lawsuit, Defendants sought to garnish costs from Plaintiff's prison trust account pursuant to 28 U.S.C. § 1915(f)(2)(B). The magistrate judge denied their motion, and the district court affirmed on appeal. Defendants now seek review of that decision before this court. Because the clear language of the statute allows for and

does not prohibit Defendants' request, we vacate and remand.

## I.

Plaintiff, a Louisiana prisoner, brought suit under 42 U.S.C. § 1983 for injuries sustained while he was incarcerated at Hunt Correctional Center ("HCC") in Louisiana and was allowed to proceed in forma pauperis ("IFP"). He sued Defendants, who were all HCC personnel, alleging that he was exposed to mace when McNeil sprayed another inmate in a nearby cell. Upon recommendation by a magistrate judge, the district court granted Defendants' unopposed motion for summary judgment. Plaintiff did not appeal that ruling.

Subsequently, Defendants moved to tax costs and were awarded $24. They then asked for an order to garnish Plaintiff's prison trust account pursuant to 28 U.S.C. § 1915(f)(2)(B). The magistrate denied Defendants' motion, concluding that § 1915(f)(2)(B) only provides the court, and not prevailing parties, with a mechanism for collection of costs. In a one-sentence decision, the district court affirmed the magistrate's order. This appeal followed.

## II.

Section 1915 pertains to IFP proceedings. Under subsection (f)(1) of that statute, "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings . . . ." "If the judgment against a prisoner includes the payment of

2

costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered." 28 U.S.C. § 1915(f)(2)(A). And a "prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2)." 28 U.S.C. § 1915(f)(2)(B).

Subsection (f)(2)(B)'s reference to subsection (a)(2) is a scrivener's error as the reference should be to subsection (b)(2).[1] Subsection (a)(2) merely states that a prisoner bringing suit shall submit a certified copy of his trust fund account statement, while subsection (b)(2) actually provides a mechanism for the payment of filing fees. That latter subsection provides:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

In its decision, the magistrate judge correctly observed the typographical error in subsection (f)(2)(B), but nonetheless found that Defendants could not utilize the payment method outlined in subsection (b)(2) to recover their costs. Reading subsection (b)(2) in conjunction with subsection (b)(1),[2] the magistrate judge

---

[1]Defendants do not challenge this finding. Other courts have also ruled that the reference to subsection (a)(2) is a mistake. *See*, *e.g.*, **Talley-Bey v. Knebl**, 168 F.3d 884, 886-87 (6th Cir. 1999).

[2]Subsection (b)(1) provides:
Notwithstanding subsection (a), if a prisoner brings a

3

concluded that only the costs of the court could be paid off via the method stated in subsection (b)(2). He inferred that "Congress enacted these provisions to provide the court with a mechanism to collect its fees and costs, which have historically gone uncollected," while prevailing parties have always had a state law mechanism through which to collect costs taxed in their favor.

Defendants counter that the magistrate judge erred in ignoring the clear wording of subsection (f) and in creating limitations that are nowhere in the statute. They allege that § 1915 does not restrict the term "costs" to costs owed to the court. To support their contention, Defendants allude to the fact that subsection (f)(1) allows a prevailing party to have "costs" taxed in its favor. And they allude to the fact that subsection (f)(2)(A) specifically makes a prisoner liable for the full amount of the "costs" taxed. In light of these facts, Defendants wonder how the term "costs" in subsection (f)(2)(B) can be so different than as it is used in the other two subsections.

Furthermore, Defendants argue that the fact that they may get

civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of–
    (A) the average monthly deposits to the prisoner's account; or
    (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

4

their costs via a state procedure is of no significance since even the court may utilize the state system to collect costs taxed in its favor. They maintain that through the PLRA, Congress created a simpler system by which costs may be collected from prisoners and that both the courts and prevailing parties should be able to benefit from that system. In addition, Defendants assert that allowing prevailing parties to collect via subsection (b)(2) better effectuates the purpose of the PLRA to deter "frivolous prisoner litigation by instituting economic costs for prisoners wishing to file suits." *Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998). They contend that a simplified system of collecting costs more effectively exacts the economic costs that ought to be on the minds of litigating prisoners.

We have never addressed the present issue on appeal, and very few courts have even remotely touched upon it. The three circuits that have discussed § 1915(f)(2)(B) have all, in dicta, implied that the same filing fee payment method stated in subsection (b)(2) may be utilized to pay any costs assessed against an IFP prisoner. *See* *Feliciano v. Selsky*, 205 F.3d 568, 572 (2d Cir. 2000); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Tucker v. Branker*, 142 F.3d 1294, 1298 (D.C. Cir. 1998).

Utilizing the canons of statutory interpretation, we likewise conclude that prevailing parties may recover costs via the method prescribed in subsection (f)(2)(B), i.e., subsection (b)(2). "In

5

a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling, Co.*, 112 S. Ct. 2589, 2594 (1992) (citing *Demarest v. Manspeaker*, 111 S. Ct. 599, 603 (1991)). Section 1915(f)(2)(B) clearly indicates that a "prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection [(b)(2)]." Nowhere in the rest of the statute does it define "costs" as costs to the court. Indeed, the same language in a single statutory provision cannot have two different meanings, *see Davis v. Davis* **(In re Davis)**, 170 F.3d 475, 480 (5th Cir. 1999) (citing *Sullivan v. Stroop*, 110 S. Ct. 2499, 2504 (1990)), *cert. denied*, 120 S. Ct. 67 (1999), and "costs" throughout the rest of § 1915 has a general meaning, without any apparent limitations. Thus, the definite import from subsection (f)(2)(B) is that prevailing parties may recover their costs through the method described in subsection (b)(2).

And although the magistrate judge did not solely focus on subsection (b)(2), but read that subsection together with subsection (b)(1) to conclude that recovery of costs was limited to the court, that determination read too little into those subsections and must also fail. Admittedly, subsections (b)(1) and

(b)(2) refer to collection of filing fees by the court, and not any other entity. But that does not mean that the 20 percent method of paying fees stated in those provisions is limited to just paying fees or costs to the court or that the method could not be utilized to pay off costs to parties other than the court. Subsection (b)(1) only refers to the court's ability to collect filing fees because that entity is the normal authority that collects such costs. It is not inconceivable to think that when subsection (f)(2)(B) referred to the 20 percent method of payment, that subsection was referring to the form of payment and not necessarily the fact that under subsection (b)(1) the court was the only one recovering fees. That is, the reference in subsection (f)(2)(B) was to the method of deducting from the prisoner's trust account 20 percent of the preceding month's income, rather than the court's ability to assess and collect fees for itself.[3] Thus, we conclude that the term "costs" in § 1915(f)(2)(B) is not limited to costs to the court, but may also include costs awarded to prevailing parties, and that those parties may utilize the method of payment stated in subsection (b)(2) to collect their awarded costs.

Accordingly, in this Circuit, when costs, either at the district or appellate level, are awarded to a prevailing party against an IFP prisoner, that prisoner shall be required to make

---

[3]In any case, subsection (f)(2)(B) as interpreted by the magistrate judge and other circuit courts only refers to subsection (b)(2), and not subsection (b)(1).

payment pursuant to the manner outlined in subsection (b)(2).  In the case of appellate costs, a prevailing party may be awarded costs after a judgment for costs has been rendered in its favor[4] and it files a bill of costs with the clerk of this court within the time prescribed by Federal Rule of Appellate Procedure 39(d).[5] Upon the clerk's approval of the bill of costs and issuance of the mandate, the clerk shall forward a copy of this opinion and the approved bill of costs to the custodial institution for collection pursuant to subsection (b)(2).  At the district court level, a prevailing party may be awarded costs after a judgment for costs

---

[4]Under Rule 39(a) of the Federal Rules of Appellate Procedure, the following rules apply to a judgment of costs unless the law provides or the court orders otherwise:
> (1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;
> (2) if a judgment is affirmed, costs are taxed against the appellant;
> (3) if a judgment is reversed, costs are taxed against the appellee;
> (4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

[5]Rule 39(d) provides:
(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.
(2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.
(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs.  If the mandate issues before costs are finally determined, the district clerk – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

has been rendered in its favor and it complies with the necessary procedures and filings as required by the Federal Rules of Civil Procedure and each respective district court's Local Rules.

The custodial institution may use its current procedures for collecting filing fees pursuant to subsection (b)(2) to collect costs awarded to a prevailing party. That is, in any one month the amount in an inmate's trust fund account exceeds $10, the institution shall deduct 20% of the previous month's income credited to the account. *See* 28 U.S.C. § 1915(b)(2). This shall be in addition to any deductions made to pay filing fees that the inmate might owe. It is of no consequence that these deductions might cause the account balance to drop below $10. *See* **McGore v. Wrigglesworth**, 144 F.3d 601, 606 (6th Cir. 1997) (finding, in cases involving filing fees, no violation where the two rules converge to reduce a trust fund's balance below $10). The institution shall forward the money collected for costs to the prevailing party. Because the amounts collected frequently will be small, the institution need not issue monthly checks for a very small amount, but may allow the fund to accumulate for a period of time. Further, if the prevailing party is entitled to costs from more than one inmate (for example, where the state attorney general's office has defended prison officials and been awarded costs in numerous civil rights cases), the institution may combine the payments in one check, clearly specifying how much is to be

credited to each case.  Finally, in those months the institution collects no money from an inmate who owes costs, the institution does not need to report monthly to the prevailing party about collection efforts.[6]

For the foregoing reasons, the order of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

---

[6]The institutions might also find it advisable upon receiving an award of costs to notify the prevailing party that payments likely will be small, sporadic, and paid over a long period of time.