**In re Donald DUBOIS and Joan Dubois, Debtors.**

**Donald and Joan Dubois, Movants,**

**v.**

**Fales and Fales, P.A., Respondent.**

**No. 03–21421.**

United States Bankruptcy Court, D. Maine.

March 18, 2004.

E. Chris L'Hommedieu, Parkview Offices, Lewiston, ME, for Movant.

Anthony K. Ferguson, Lewiston, ME, for Respondent.

### MEMORANDUM OF DECISION

JAMES B. HAINES, JR., Chief Judge.

Before me on a stipulated record is the debtors' motion to avoid a judicial lien against their home in Lisbon, Maine. Fales and Fales, P.A. ("Fales"), the lienholder, defends on the ground that Joan Dubois' exemption in her home is so limited by the express terms of the Maine exemption statute that its lien works no impairment. Because the lien-specific exemption limitation on which Fales applies cannot operate in the bankruptcy context, the debtors' motion will be granted.

### Background [1]

On March 2, 1988, Fales obtained a state court judgment against Joan Dubois ("Joan") in the amount of $1,183.86. It acquired a writ of execution on March 14, 1988, and recorded the writ in the Androscoggin County Registry of Deeds four days later, perfecting a lien on Joan's interest in her Lisbon, Maine, residence.[2]

The Dubois' filed for chapter 7 relief on September 2, 2003, listing the Lisbon home (held as joint tenants) as residential real estate. The residence was worth $80,000 at bankruptcy. Both debtors claimed the maximum homestead exemptions allowed them under Maine law.[3]

---

1. The parties have stipulated to all facts essential to today's ruling. *See* Joint Stipulation of Facts, doc. # 13, dated 1/13/2004.

2. Although the stipulation does not disclose whether the debtors owned the property in

1988, Schedule A reveals that they purchased it in 1974.

3. Maine has "opted out" of the exemptions provided by federal law. *E.g.,* § 522(b)(1); 14 M.R.S.A. § 4426; *In re MacLeod,* 295 B.R.

On December 5, 2003, they filed their motion, alleging, *inter alia,* that Fales's judicial lien impaired their homestead exemption and was thus avoidable under § 522(f).[4]

Fales argues that the plain terms of the state exemption statute limits Joan's exemption to $25,000, an amount the parties have stipulated is not sufficient to permit the lien's avoidance.

### Issue

The parties agree that Fales's lien will be avoided entirely if Joan is entitled to § 4422(1)(B)'s $60,000 exemption and that the lien will not be affected if Joan's exemption is limited to the $25,000 provided for in § 4422(1)(A).[5] Joan was over age 60 years on the petition date, entitling her to

the $60,000 exemption. But the issue remains whether § 4422(1)(B)'s restriction which limits the $60,000 exemption's availability and applicability to liens obtained *after* the effective date of the section,[6] operates in bankruptcy. In other words, given that Fales obtained its lien *before* § 4422(1)(B)'s effective date, may Joan set up no more than § 4424(1)(A)'s $25,000 exemption against the lien in bankruptcy for purposes of § 522(f)?

### Discussion

■ Fales argues straightforwardly that the Maine exemption statute limits Joan's exemption to $25,000 and, so limited, the exemption is not impaired. Indeed, the exemption statute does say that

1, 4 n. 4 (Bankr.D.Me.2003). Maine's homestead exemption may be found at 14 M.R.S.A. § 4422(1), which states, in pertinent part:

> 1. **Residence.** The exemption of a debtor's residence is subject to this subsection.
> A. Except as provided in paragraph B, the debtor's aggregate interest, not to exceed $25,000 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, ... provided that if minor dependents of the debtor have their principal place of residence with the debtor, the debtor's aggregate interest may not exceed $50,000 and provided further that if the debtor's interest is held jointly with any other person or persons, the exemption may not exceed in value the lesser of $25,000 or the product of the debtor's fractional share times $50,000
> B. The debtor's aggregate interest, not to exceed $60,000 in value, in property described in paragraph A, if the debtor or a dependent of the debtor is either a person 60 years of age or older, or a person physically or mentally disabled and because of such disability is unable to engage in substantial gainful employment and whose disability has lasted or can be expected to last for at least 12 months or can be expected to result in death; provided that if the debtor's interest is held jointly with any other person or persons, the exemption shall not exceed in value the lesser of $60,000 or the

> product of the fractional share of the debtor's interest times $120,000. This paragraph does not apply to liens obtained prior to its effective date or to judgments based on torts involving other than ordinary negligence on the part of the debtor.

The amounts in subsections (A) and (B) have recently been raised to $35,000 and $70,000, respectively. 14 M.R.S.A. § 4422(1) (West Supp.2003). The parties agree that the new, higher amounts do not apply to these debtors.

4. Unless otherwise indicated, all statutory sections cited are those of the Bankruptcy Reform Act of 1976, as amended ("Bankruptcy Code" or "Code") 11 U.S.C. § 101 *et seq.* Because of its prevalence throughout this decision, 14 M.R.S.A. § 4422, the Maine exemption statute, will also be referred to as just " § 4422."

5. First Circuit authority dictates operation of § 522(f)'s lien avoidance calculus for jointly held properties. *See Nelson v. Scala (In re Nelson),* 192 F.3d 32 (1st Cir.1999). The equation's application and result are not at issue here. Only one variable—the exemption amount—is in dispute.

6. The parties have stipulated that the effective date of the section in dispute was September 30, 1989, meaning that Fales's lien predates it by over a year.

the $60,000 exemption "does not apply to liens obtained prior to [the paragraph's] effective date ...." § 4422(1)(B). And Fales's lien was obtained prior to that date. Unfortunately, Fales's analysis takes no account of pertinent Bankruptcy Code provisions, namely § 522(c) and § 522(f).

Section 522(f) establishes a debtor's ability to avoid the fixing of a judicial lien on exempt property. It provides, in relevant part, that:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt-

(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement; and

(ii) to the extent that such debt -

(I) is not assigned to another entity, voluntarily, by operation of law, or otherwise; and

(II) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support;

. . .

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Section 522(c) delimits the types of debts that can be collected, after bankruptcy, from exempt property. *See Bruin Portfolio, LLC v. Leicht (In re Leicht)*, 222 B.R. 670, 676 (1st Cir. BAP 1998). It states:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is -

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title;

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount,

award, or other financial assistance for purposes of financing an education at an institution of higher education . . . .

The categories of debt so preferred are few indeed. They do not take account of state law provisions that retard their exemptions' effectiveness in other ways as a matter of state debtor/creditor law. *In re Boucher,* 203 B.R. 10, 13 (Bankr.D.Mass. 1996) ("In light of the clear command of section 522(c) and the pre-emptive power of Congress under its constitutional authority to establish uniform bankruptcy laws, congressional approval of the use of state exemptions cannot be taken to extend to exemptions that protect debts left unprotected by section 522(c)."); *see also Owen v. Owen,* 500 U.S. 305, 313, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (recognizing that states' ability to "opt-out" of the federal exemption scheme is not absolute, but rather must be applied "along with whatever other competing or limiting policies the statute contains"). Clearly, the Maine residence exemption statute, by limiting the exemption to $25,000 against a single category of lien claim (i.e., a lien predating the statute's effective date)—a category not included in § 522(c)—is at odds with federal bankruptcy law. As *Leicht* teaches, the conflicting state law provision must give way.

In *Leicht,* the debtors incurred a debt prior to their purchase of a home. *Leicht,* 222 B.R. at 671. Following their home purchase they filed a homestead declaration pursuant to Massachusetts law, entitling them to a homestead exemption. *Id.* Their creditor subsequently obtained a writ of attachment and recorded it, obtaining a lien on the property. *Id.* The debtors then filed for chapter 7 bankruptcy relief and moved to avoid the lien under § 522(f). *Id.* at 671–72. The bankruptcy court granted the debtors' motion. *Id.* On appeal, the creditor asserted that the bankruptcy court had erred in nullifying the Massachusetts homestead statute's express exception for "debts contracted prior to the acquisition of" the homestead estate. It contended that its lien interest was, thus, an interest apart from the homestead estate, and, therefore, its lien could not possibly "impair" the debtors' exemption within the meaning of § 522(f). *Id.* at 675.

The appellate panel began its analysis with a review of conflicting Massachusetts cases (from the bankruptcy and district courts) interpreting the Massachusetts homestead exemption in relation to §§ 522(c) and (f). *Id.* at 675–76. The panel determined that in light of § 522(c)'s express limitation of the categories of debts for which exempt property might answer after bankruptcy, as well as underlying federal goals (e.g., the bankruptcy "fresh start"), "to defer to state law so far [as to permit the state to define the kinds of debts for which exempt property might answer] would import into bankruptcy proceedings alien notions that frustrate federal aims." *Id.* at 677; *see also Davis v. Davis (In re Davis),* 170 F.3d 475, 488 (5th Cir.1999) (en banc) (Dennis, J., dissenting) ("§ 522 is designed to perform two essential functions. In general, it shields exempted property from liability to seizure and sale for the payment of nondischargeable debts. As exceptions to that general rule, it allows piercings of the shield and permits levies upon exempted property for the payment of a small number of certain types of nondischargeable debts. The exceptions are narrowly and carefully drawn to uniformly further several policies deemed by Congress to be of national importance."). The *Leicht* panel concluded:

although through § 522(b) Congress provided states with the opportunity to define the category and content of exemptions resident debtors may invoke in bankruptcy (going so far as to authorize states to "opt out" of the federal exemp-

tion scheme), it defined the operative effect of exemptions in bankruptcy through §§ 522(c) and (f) .... As a consequence, those provisions of the Massachusetts homestead statute that limit the exemption's vitality against certain categories of claims cannot hold sway against conflicting Code provisions. *Leicht,* 222 B.R. at 677. Because the Massachusetts exemption statute's exception for pre-homestead declaration debts conflicted with the § 522(c)'s limitation of debts for which exempt property must answer, the state limitation was preempted by § 522(c). *E.g., Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 683 (1st Cir.1999) (Massachusetts exemption statute's exclusion of prior contracted debts conflicts with § 522(c) and is thus preempted); *see also Owen,* 500 U.S. at 313, 111 S.Ct. 1833 (concluding that Florida exemption statute's exclusion of pre-existing liens from homestead's protection "does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision").

The Maine exemption statute attempts to limit the exemption Joan otherwise "would have been entitled" to, § 522(f)(1), *but for* Fales's lien (i.e., a lien obtained prior to the statute's effective date). It conflicts with § 522(c)'s limitation of debts that exempt property may be called upon to pay. "Those provisions of the [exemption] statute that limit the exemption's vi-

tality against certain categories of claims cannot hold sway against conflicting Code provisions." *Leicht,* 222 B.R. at 677.[7]

### Conclusion

For the reasons set forth above, the debtors' motion to avoid the judicial lien of Fales & Fales, P.A. will be GRANTED. A separate order consistent with this opinion will enter forthwith.

---

**7.** I recognize that the Maine exemption statute differs from both the Massachusetts statute preempted in *Weinstein* and *Leicht,* as well as the Florida statute considered in *Owen,* in at least one important respect: the Maine statute does not *completely* restrict a debtor's exemption based on the kind of debt/lien at issue. Rather, it *limits* the exemption amount based on the kind of debt/lien at issue. Under Massachusetts law, the question was whether the exemption could operate against the claim *at all.* The Maine law before me poses the question whether the ex-

emption operates *against Fales's lien* after $25,000 of equity is exempted or after $50,000 is exempted. That being said, the distinction makes no difference. In bankruptcy, the Maine statute's limitation operates impermissibly to qualify the availability of the exemption, and thus the claims that can be collected from otherwise exempt property, by a characteristic of the claim at issue. Because that characteristic is not within the limited universe of claims provided such preferred treatment under § 522(c), it is preempted by federal law.